MILLER, Judge
(dissenting).
I am unable to concur in the conclusions which have been reached by my colleagues in this case.
The “string bean contract” prepared by Mr. Rich (Company) required Company to harvest beans without cost to the Grower (Mr. Young) and provided that “where *926 beans suitable for processing are not harvested by Company, * * * Grower is not liable for seed advanced.” (Contract Articles B-2 and C-3.) The contract went on to provide in Article C-4:
“In case of disagreement, Agents of Louisiana Department of Agriculture (are) to determine whether beans are suitable for processing.”
Rich harvested beans from approximately half the lands planted by Young and from this harvest Young received the price of $1,023 which was applied to the $2,058 price of the seed beans sold by Company to Grower. This left the balance due of $1,-034.86, approximately half the original debt.
From the evidence it is clear that the disease which blighted this year’s crop of string beans was general. Yet Rich harvested all beans from a neighboring planter (Mr. Geneus Boudreaux) who operated under a similar contract, and his seed bill was almost exactly paid. Another neighboring planter’s seed bill (Mr. Lee Ellis) was more than met when almost all his beans were harvested. The record, although not clear on this point, indicates that both these neighboring fields were harvested after Rich abandoned operations on two of Young’s half harvested fields, and without harvesting anything from the third (the Pete field) of Young’s fields. It is noted that Young’s fourth field (the Major field) was completely harvested. This field consisted of 12 acres, and 700 pounds of the 4900 pounds of seed sold by Rich to Young was planted on the Major field. This field yielded 12,314 pounds of the 37,205 pounds of beans harvested from Young’s fields.. If this yield was projected, Young would have completely paid the seed bill and recovered some of his other expenses.
The contract required Rich to harvest beans “suitable for processing” on penalty of losing his right to recover the cost of seed sold by the Company to Grower. The majority has held that the trial judge must have concluded that Rich’s testimony was credible when he testified that all suitable beans were harvested and that the trial judge likewise held unacceptable Mr. Young’s testimony and that of several area farmers that the beans left in the field were just as good as the beans harvested. I am unable to accept this reasoning. The trial judge did not make this finding. Neither did the trial judge state that there was no controversy between the parties on this issue of the case.
It is difficult to read the impressive testimony by Young detailing the controversy and particularly referring on two occasions to the fact that he told Rich that he didn’t think it would do any good to physically fight Rich at the time, for it was apparent that Rich would not harvest all the crop. As I read the record, the evidence requires a holding that there was a controversy between the parties.
It appears that while Rich did testify that all good beans were harvested, his standard for determining “beans suitable for processing” was whether or not it was financially feasible to him to harvest the beans. Typical of his position is his testimony at Tr. 39:
“There was no disagreement on the beans that were left. Mr. Goudeau, you understand that I wanted to pick those beans. I mean I had to pick them. I mean if there was a bean to be picked that I could have picked and not lost my neck I would have done it.” (Emphasis added.)
It is abundantly clear that Rich lost money on the beans that he harvested. However, the contract made no provision to excuse Rich from harvesting beans on the grounds that it was not financially feasible to him. Neither did the contract excuse his obligation to harvest beans unless all beans were suitable for processing. Furthermore, the contract did not excuse the Company from harvesting the crop if the crop yield was (as noted in the majority opinion) “very poor.”
*927 Since this contract was prepared by-Rich, the agreement must be construed in a manner most favorable to Young. Ernest A. Carrere’s Sons v. Rumore, La. App., 52 So.2d 57. Rich could have provided language in the contract to define “serious damage”, as that term is used in clause “C-l” quoted in the majority opinion. The effect of my colleagues’ decision is to hold that “serious damage” exists when it is not financially feasible for the Company to harvest the crop. As explained by Young, Rich reduced his loss by saving the cost of harvesting the beans and demanding that Grower pay for the seed.
I am impressed by the fact that Rich had the Horticulturist Specialist Mr. Mo-reau examine several fields, but at no time did he have him examine any of Young’s four fields.
In summary, this contract required Grower to furnish the land, the cultivation equipment, all labor and expenses (excepting for harvesting the crop) the seed, fertilizer and sprays to control insects. All of this was furnished by Young and his work was well performed in accordance with specifications approved by and supervision given by Company. The only obligations Company had was to 1. harvest the crop, without cost to Grower, and 2. pay an agreed price of $55.00 per ton for the beans harvested.
Here the Grower lost the substantial costs of furnishing the land, the equipment, the labor, the fertilizer and sprays to control insects. It does not appear just to allow Company to avoid its obligation of “harvesting beans without cost to the Grow-ér” on the testimony of Rich to the effect that there was no dispute between the parties on the issue of whether or not “beans suitable for processing” were left on Young’s land. This is particularly true when we consider that Rich had the Horticulturist Specialist Mr. Moreau examine some of the crops but did not have him inspect any of Young’s four fields.
Mr. Rich prepared the contract. The contract required that he harvest the beans without costs to Grower unless the beans were not suitable for processing. In case of disagreement the issue was to be submitted to an Agent of the Louisiana Department of Agriculture. In my view Rich had the burden of proving that all beans suitable for processing were harvested. He failed to carry that burden. Under these circumstances, the “string bean contract” specifically relieved Young from liability for the price of the seed.
For these reasons I respectfully dissent from the majority opinion.
*928 H